## UTAH-IDAHO SUGAR CO. v. STATE TAX COMMISSION.

No. 5906. Decided December 2, 1937. (73 P. [2d] 974.)

*Ashby D. Boyle,* of Salt Lake City, for plaintiff.

*Ned Warnock,* of Salt Lake City, for defendant.

MOFFAT, Justice.

There is but one ultimate fact to be determined in this cause. That fact is: When was the loss sustained? The fact determined, all else must accord. The State Tax Commission ordered a deficiency assessment against the Utah-Idaho Sugar Company. The deficiency assessment is based upon a finding that the loss occurred under a contract entered into with the Utah Realty Corporation on January 30, 1933. The position of the Utah-Idaho Sugar Company, sometimes herein referred to as the taxpayer, is that the

loss occurred during its fiscal year which began February 28, 1933, and ended February 28, 1934.

The cause comes to this court upon an application for a writ of certiorari made by the taxpayer. No procedural or jurisdictional questions or failure to comply with conditions precedent are raised, and there is no conflict in the evidence. All of the evidence comes from witnesses for the taxpayer. The decision of the Tax Commission may be reviewed by this court upon both the law and the facts. R. S. Utah 1933, 80-14-39.

The Tax Commission took the position that the contract of January 30, 1933, constituted a "closed transaction" as that term is used in relation to corporation income taxes, and that, therefore, the loss was sustained as of that date. The contract standing alone would seem to justify the position of the Tax Commission, if the contracting parties were able, willing, and ready to perform on the date of the signing of the contract and were free from conditions precedent in the premises.

The contract of January 30, 1933, provides, among other things not material here, and after certain premising recitals, that:

"The said Utah Realty Corporation undertakes and agrees to pay or cause to be cancelled the unpaid and equalized assessments of benefits and the Drainage taxes now delinquent and the unpaid lien of the Drainage bonds of the said Millard County Drainage District No. Four, and to deliver within sixty days from date hereof properly executed receipt or receipts from the Treasurer of Millard County as well as release or releases in full form Millard County Drainage District No. Four, showing payment to have been made and cancellation procured by said Utah Realty Corporation as above provided with respect to the following described lands of Utah-Idaho Sugar Company in Millard County. * * *"

Then follows a description of the lands to be freed from liens, assessments, etc., as referred to in the contract. It is then further provided what the Utah-Idaho Sugar Company is to do as follows:

"In consideration of the foregoing covenants on the part of the said Utah Realty Corporation to the said Utah-Idaho Sugar Company, said Utah-Idaho Sugar Company undertakes and agrees to convey by good and sufficient deed, free and clear of all encumbrances, to said Utah Realty Corporation, the following described lands in Millard County Drainage District No. 4, in Millard County, Utah, more particularly described as follows: [Then follows a description of the lands agreed to be conveyed, *free and clear of all encumbrances.*]"

The foregoing is a contract of sale on the part of the Utah-Idaho Sugar Company of the lands described to the Utah Realty Corporation upon the payment and cancellation of unpaid and equalized assessments of delinquent drainage taxes and bond lien against the property first described. The payment of the delinquent assessments and removal of the bond lien were to be accomplished and receipts of the treasurer of Millard county to be presented within 60 days from and after January 30, 1933. Under the statute, section 80-14-1, R. S. 1933, which was in effect before the transaction in question took place, the "taxable year" of the Sugar Company was the same as its fiscal year, which ended February 28, 1933, or February 28, 1934, depending upon the year in which the claimed loss was sustained. " 'Fiscal year' means an accounting period of twelve months, ending on the last day of any month other than December." The fiscal year is not in dispute.

Among other things, and in so far as material here, section 80-14-12, R. S. 1933, provides:

"(1) The net income *shall be computed upon the basis of the taxpayer's annual accounting period* (fiscal year or calendar year as the case may be) in accordance with the method of accounting regularly employed *in keeping the books of such taxpayer.* * * *

"(2) The amount of all items of gross income shall be included in the gross income *for the taxable year in which received by the taxpayer,* unless, under the methods of accounting permitted under this section, any such amounts are to be properly accounted for as of a different period.

"(3) The *deductions and credits* provided for in this chapter *shall be taken for the taxable year in which 'paid or accrued' or 'paid or*

*incurred,' dependent upon the method of accounting* upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period." (Italics added.)

And section 80-14-1, subsec. (6), provides:

"(6) The terms *'paid or incurred' and 'paid or accrued'* shall be construed according to the method of accounting upon the basis of which the net income is computed under this chapter. The term 'received' for the purpose of the computation of net income under this chapter means *'received or accrued'* and the term *'received or accrued'* shall be construed according to the method of accounting upon the basis of which the net income is computed under this chapter." (Italics added.)

Reading the contract of January 30, 1933, and the statutes above quoted, there can be but one answer to the question. Under the terms of the contract the realty corporation was allowed 60 days from the date of the contract to perform on its part. Evidence was therefore admissible, without varying the terms of the contract, as to when the realty corporation performed as to the release of assessments and liens. The evidence shows this was done March 20, 1933. This item carries the transaction as to the date the sugar company " 'received' for the purpose of the computation of net income" according to the method of computing income, into the fiscal year ending February 28, 1934. The transaction under the terms of the contract could not be said to be closed for profit and loss purposes or receipt of payment until the realty corporation performed.

Aside from this situation, the evidence, without contradiction, discloses that there was an oral agreement made simultaneously with the making of the written agreement to the effect that the written agreement was merely a tentative agreement until it had been submitted to the bondholders' committee by Mr. Sherwood, who was acting on behalf of the Utah Realty Corporation, which was the agency through which the bondholders' committee was acting. During the early part of February, 1933, Mr. Sher-

wood submitted the matter to the bondholders' committee, with the result that they accepted the proposition of the Utah-Idaho Sugar Company, subject to the condition that the sugar company should procure a release from the lien of a trust deed executed by it for the sum of about $3,-000,000, which deed included the property proposed to be conveyed to the Utah Realty Corporation. The sugar company tendered a deed in June, 1933, but did not secure the release of the trust deed lien until January, 1934.

Under the evidence submitted, no objection is raised as to its pertinency, competency, or materiality. The contract of January 30, 1933, was merely tentative and subject to a condition precedent consisting of the approval of the bondholders' committee. This approval again contained a condition that the sugar company should procure a release of the warehouse and other property proposed to be conveyed by "good and sufficient deed, free and clear of all encumbrances." Evidence as to the contemporaneous oral agreement was properly presented. "It is well settled in this state that an oral agreement made prior to or contemporaneous with the execution of a written contract that such written instrument is delivered on the express agreement that it shall not become effective except on the happening of a certain contingency" may be shown by oral evidence. *Nuttall* v. *Berntson,* 83 Utah 535, 30 P. (2d) 738, 740.

For income tax purposes, under the terms of the statute, the profit or loss of the transaction could not become an accurate reflection of the assets and liability status or the gain or loss in amount under the "method of accounting" regularly employed in keeping the books of the tax payer (section 80-14-12, supra) until the sugar company had met the condition precedent imposed by the realty corporation's conditional acceptance.

The books of the sugar company, it is argued, are kept upon an accrual basis. There is no dispute as to the amount. The sole question is when, under the taxpayer's accrual accounting period, in accordance with its method of account-

ing regularly employed, the loss was incurred, which determines the fiscal year to which the loss was or must be allocated. The loss must be allocated to the fiscal year of the sugar company which ended February 28, 1934. If it were tenable to maintain that the transaction became closed at the June, 1933, date, when the deed was tendered but not accepted, still it would not move the accounting period back to the date of the contract. The most that could be said for such situation would be that whatever loss was reflected under the contract at the time the deed was tendered could not be less than the contract set-up imposed, as the sugar company would still be carrying the liability to furnish title free and clear of all encumbrances. Had the realty corporation accepted the deed as of June, 1933, the matter of securing the release and clearing title could not reduce the loss imposed under the terms of the contract. The fact is, the tentative agreement of January 30, 1933, was binding upon neither party until unconditionally accepted or approved by the bondholders' committee or the conditions precedent had been met. Had the acceptance reported in the early part of February been unconditional, a binding contract might then have come into existence with subsequent performance being merely a matter regarded as certain to occur as to the accrual of the loss. But, when the condition precedent requiring the cancellation of the sugar company's bond lien was imposed, which the realty corporation had a right to do, the condition was one of required performance on the part of the sugar company before it could be said the Realty Corporation was bound at all.

It is held that the basis of the accrual system of accounting is that obligations incurred in the normal course of business will be discharged in due course; that the deductions have been "paid or accrued" or "paid and incurred"; but, in order to be accruable in the taxable year, a valid obligation upon which the profit (or loss, in the case of a deduction) is to be determined must have existed in the year in which the obligation becomes binding or en-

forceable. The date of the accrued right to receive income, or the obligation to pay or expend money constituting a deductible loss, is the date that fixes liability. Gain or loss may not be said to be fixed or accrued when the obligation is contingent upon the happening of a future event. No duty arises until the happening of the fixed event. No duty or liability to pay an income tax upon a transaction arises until the taxable year in which the event constituting the condition precedent occurs under any system of accounting. *Helvering* v. *Russian Finance & Construction Corporation* (C. C. A.) 77 F. (2d) 324.

The decision of the State Tax Commission is annulled and the cause is remanded for such further action as is in keeping with the law and the facts as herein laid down. Plaintiff to recover costs.

FOLLAND, C. J., and HANSON and LARSON, JJ., concur.

WOLFE, J., concurs in the result.